UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

IN RE: SECTION 20 LAND GROUP LTD.,
Debtor.

---

DAVID BAUTSCH AND ANDREW J. KRAUSE,

Appellants.

vs. Case No. 2:05-cv-317-FtM-29DNF
Adversary No. 00-378

TEXTRON FINANCIAL CORPORATION,

Appellee.

---

**OPINION AND ORDER**

_____This matter comes before the Court on appellee's Motion to Dismiss Appeal for Lack of Jurisdiction (Dist. Doc. #13), filed on September 12, 2005. Also before the Court is appellants' Motion to Take Judicial Notice of Adjudicative Facts in Support of Subject Matter Jurisdiction of this Court Over the Instant Appeal (Dist. Doc. #24), filed on October 17, 2005. Appellants filed a Response to Appellee's Motion to Dismiss Appeal for Lack of Jurisdiction (Dist. Doc. #25) on October 17, 2005, and appellee filed a Reply

(Dist. Doc. #26)[1] on October 21, 2005. The Court heard oral argument on January 6, 2006.

**I.**

On September 9, 1999, the Section 20 Land Group Ltd. and several interconnected entities, including TwinEagles Gulf & Country Club, Inc. (TwinEagles), filed voluntary petitions for bankruptcy under Chapter 11. On August 15, 2000, the Bankruptcy Court entered a Confirmation Order confirming the debtors' Fourth Amended and Restated Joint Chapter 11 Plan. Among other things, the Confirmation Order provided that Textron Financial Corporation (Textron) had a valid allowable secured claim in excess of $17 million, with a first lien position on all assets of Twin Eagles. Textron's secured claim has been fully satisfied by the proceeds of the sale of all assets of TwinEagles pursuant to the Confirmed Plan, and Textron no longer holds any claims against any of the Debtors or the reorganized debtors.

On June 15, 2000, David Bautsch and Andrew J. Krause (collectively appellants) filed a Complaint in an adversary proceeding against TwinEagles and Textron. The Complaint asserted that in 1997 appellants individually reserved equity memberships in the TwinEagles by executing Membership Reservation Agreements. (Doc. #1, ¶¶ 8-9). Appellants each paid $52,000.00 for the

[1]The Docket Numbers hereinafter refer to the numbers assigned in Bankruptcy Court unless otherwise stated. Copies of the relevant documents are included in the record transmitted by the Bankruptcy Court, submitted by the parties, or available on PACER.

memberships and were issued Golden Eagle Memberships bearing certificate numbers. (Id.). Pursuant to the terms of the TwinEagles Golf & Country Club Plan, members who resigned were entitled to a refund payment in an amount equal to 90% of the initiation fees in effect on the date of resignation. (Id. at ¶¶ 8, 10). Appellants resigned their memberships in April and May, 1999, at a time when the initiation fee was $110,000, and the memberships were resold by TwinEagles. (Id. at ¶¶ 11-13). Appellants stated that the proceeds from their membership resales were used to fund pre-petition operations of TwinEagles or related entities. (Id. at ¶ 14).

The adversary proceeding Complaint contained two counts. Count I sought declaratory relief to determine appellants' rights and interest in the golf membership sale proceeds *vis-a-vis* TwinEagles, or alternatively in the combined bankruptcy estates of the interconnected cases. Appellants asserted that they were entitled to a constructive trust on the resale proceeds, or in the alternative a priority unsecured claim against the estates of the related Twin Eagles entities. Count II sought to impose a constructive trust against the resale proceeds or against Textron's secured claim against TwinEagles.

Textron filed a Motion for Summary Judgment as to Count II, the only count pertaining to it. Textron sought summary judgment because a constructive trust required specific identifiable property against which a trust could be imposed, and such property

could not be identified; the claims were barred by the *res judicata* effect of the confirmation order; and the claims were merely prepetition breach of contract claims between plaintiffs and TwinEagles, and "should not involve" Textron. On July 18, 2002, the Bankruptcy Court entered an Order Granting Motion for Summary Judgment (Doc. #28) and entered a Final Judgment (Doc. #29) in favor of Textron Financial Corporation, dismissing Textron from the adversary proceeding Complaint with prejudice. The Order did not address the specific grounds raised, but simply stated that Textron had met its summary judgment burden.

On May 16, 2005, after two appeals to the district court were dismissed for lack of jurisdiction[2], appellants filed a Notice of Voluntary Dismissal of Claim With Prejudice (Doc. #52) as to TwinEagles in the adversary proceedings before the Bankruptcy Court. Appellants then filed the current Third Notice of Appeal (Doc. #53). On August 23, 2005, the undersigned found that the appeal was timely and the orders appealable, and denied appellee's Motion to Strike. (Dist. Docs. #6, #9). Appellee's Motion to Dismiss for lack of jurisdiction is now before the Court.

**II.**

Appellee argues in its motion to dismiss that the district court lacks jurisdiction to hear the appeal because the matter does

---

[2]The first appeal was also dismissed in the alternative for failure to demonstrate excusable neglect for failure to file a designation of the record and a statement of issues.

not satisfy the outer limit of bankruptcy jurisdiction, set forth in the "related to" test, because the outcome of this appeal cannot conceivably have an affect on the bankruptcy estate. In re Lemco Gypsum, Inc., 910 F.3d 784, 788 (11th Cir. 1990)("The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have an affect on the estate being administered in bankruptcy."). On May 16, 2005, appellants dismissed their claims in the adversary proceeding against TwinEagles, the only party to the adversary proceeding that was a debtor before the Bankruptcy Court. Therefore, no relief can be obtained in the appeal with respect to TwinEagles as to either Counts I or II. If appellants are successful as to Count II, the only appellate relief would be against Textron. As such, the lawsuit is now a matter solely between third-party non-debtors, and cannot affect the bankruptcy estate of TwinEagle or related entities.

Appellants' Response to the motion to dismiss argues that the Bankruptcy Court had jurisdiction over the adversary Complaint at the time it was filed. They concede, however, that discovery in the bankruptcy court established that TwinEagles transferred the golf membership sale proceeds to Textron pre-petition, and that once the proceeds were no longer held by TwinEagles they ceased to be property of the estate. Appellants assert that while there was initial subject matter jurisdiction under the bankruptcy jurisdiction statute, 28 U.S.C. § 1334, that jurisdiction ceased to

exist, and appellants are therefore required to demonstrate a separate basis for the subject matter jurisdiction of the district court to consider the appeal or to act generally. Appellants assert that this independent basis for subject matter jurisdiction is found in the district court's diversity jurisdiction, 28 U.S.C § 1332. Appellants argue that diversity jurisdiction was created on May 16, 2005, when appellants dismissed their claim with prejudice against TwinEagles. This diversity jurisdiction, appellants assert, relates back to the filing of the adversary Complaint, giving the Bankruptcy Court jurisdiction, at least initially. Appellants concede, however, that by the time of the Bankruptcy Court's summary judgment order the matter was no longer a core proceeding, so jurisdiction no longer existed in the Bankruptcy Court. Appellants argue that the district court should treat the Bankruptcy Court's summary judgment order and final judgment as proposed findings of fact and conclusions of law, and make such *de novo* findings as necessary to give review to the Bankruptcy Court's summary judgment against appellants.

Appellee's Reply asserts, for the first time, that the district court lacks jurisdiction because the Bankruptcy Court never had jurisdiction. Appellee asserts that since appellants concede that the golf membership sale proceeds were transferred by debtor TwinEagles to Textron prior to the filing of debtors' bankruptcy cases, it was never the property of any of debtors' bankruptcy estates and could not have been. In re Galluci, 931

F.2d 738, 742 (11th Cir. 1991). Thus, appellee asserts that appellants' argument that the Bankruptcy Court's jurisdiction "ceased" is incorrect because Bankruptcy Court jurisdiction was lacking in the first instance. Appellee also argues that appellants cannot create diversity jurisdiction by dismissing a defendant from their adversary proceeding complaint, and that in any event diversity jurisdiction does not give a bankruptcy court initial jurisdiction and does not give a district court appellate jurisdiction over a bankruptcy court decision.

**III.**

**A.**

The district court in these proceedings functions as an appellate court. 28 U.S.C. § 158(a)(1). The Court rejects the arguments that a district court lacks appellate jurisdiction because the Bankruptcy Court lacked subject matter jurisdiction. A district court has appellate jurisdiction to decide whether it has jurisdiction and to decide whether the Bankruptcy Court had subject matter jurisdiction (even if the answer turns out to be that the Bankruptcy Court lacked such jurisdiction). Arizonans for Official English v. Arizona, 520 U.S. 43, 73 (1997); Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 376-77 (1940); In re Boone, 52 F.3d 958 (11th Cir. 1995); In re Gallucci, 931 F.2d 738, 741 (11th Cir. 1991).

**B.**

The issue of the Bankruptcy Court's jurisdiction is raised for the first time in this appeal. A Bankruptcy Court has the authority to pass upon its own jurisdiction, and the parties could (and should) have challenged jurisdiction in the Bankruptcy Court. The failure to raise the issue of the Bankruptcy Court's jurisdiction before the Bankruptcy Court precludes either party from collaterally challenging that jurisdiction, but does not preclude a challenge on direct appeal. Chicot County Drainage Dist., 308 U.S. at 377; In re Optical Technologies, Inc., 425 F.3d 1294, 1306 (11th Cir. 2005). Since this case involves a direct appeal, the issue of the Bankruptcy Court's jurisdiction can be raised for the first time on appeal. E.g., Allen v. Toyota Motor Sales USA, Inc., No. 04-14430, 2005 WL 3096631 (11th Cir. Nov. 21, 2005)("a jurisdictional defect cannot be waived by the parties and may be raised at any point during litigation.")

**C.**

The federal district courts have original jurisdiction over bankruptcy cases and all civil proceedings arising under, arising in, or related to bankruptcy cases. 28 U.S.C. § 1334(a), (b). In the Middle District of Florida, such cases are automatically referred to the Bankruptcy Court pursuant to 28 U.S.C. § 157(a). The broadest bankruptcy jurisdictional basis is the "related to" proceedings, and after Northern Pipeline Constr. Co. v. Marathon

Pipe Line Co., 458 U.S. 50 (1982), jurisdiction over matters allegedly related to a bankruptcy case are analyzed in two steps: First, a reviewing court decides whether federal jurisdiction existed in the district court; second, if so, the reviewing court must determine whether the Bankruptcy Court properly exercised its constitutionally available powers in proceeding over the matter as a core or non-core proceeding. In re Lemco Gypsum, Inc., 910 F.2d 787 (11th Cir. 1990).

A district court is a court of limited jurisdiction, and a presumption exists that every federal court is without jurisdiction unless the contrary affirmatively appears from the record. United States v. Rojas, 429 F.3d 1317, 1320 (11th Cir. 2005). For this reason, facts demonstrating federal jurisdiction must be set forth in the complaint, Taylor v. Appleton, 30 F.3d 1365, 1367 (11th Cir. 1994), and "ordinarily depends on the facts as they exist when the complaint is filed." Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 830 (1989). "After jurisdiction has been determined to exist on the basis of the allegations of the complaint, the court has the power to decide the dispute between the parties even though the complainant ultimately fails to prove the cause of action on which jurisdiction was originally based." Mobil Oil Corp. v.

Kelley, 493 F.2d 784, 786 (5th Cir.)[3](citations omitted), cert. denied, 419 U.S. 1022 (1974).

The adversary Complaint alleged that the proceeding was "a core proceeding pursuant to 28 U.S.C. § 1334." (Dist. Doc. #20, ¶ 3). This was sufficient to allege jurisdiction in the Bankruptcy Court.

The parties now agree that the true facts established the lack of bankruptcy jurisdiction. The funds had been transferred pre-petition to a third party, and the matter was a non-core, unrelated proceeding. "If the action does not involve property of the estate, then not only is it a noncore proceeding, it is an unrelated matter completely beyond the bankruptcy court's subject-matter jurisdiction." In re Gallucci, 931 F.2d at 742. The effect of this is not that the Bankruptcy Court lacked jurisdiction from the inception, but rather that the Bankruptcy Court should have dismissed the adversary Complaint for a lack of subject matter jurisdiction instead of granting defendants'/appellees' summary judgment motion on the merits. Additionally, as both a noncore and unrelated proceeding, the Bankruptcy Court could not submit proposed findings of fact and conclusions of law to the district court pursuant to 28 U.S.C. § 157(c)(1) or enter appropriate orders and judgments with the consent of the parties pursuant to §

---

[3]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

157(c)(2). In re Gallucci, 931 F.2d at 742 n. 15. Therefore, the order and final judgment of the Bankruptcy Court must be vacated for lack of jurisdiction.

**D.**

While conceding that the Bankruptcy Court lost its bankruptcy jurisdiction prior to the entry of the dispositive order and final judgment as to Textron, appellants assert that the district court has jurisdiction because there is now complete diversity of citizenship and an amount in controversy which exceeds the jurisdictional amount. Thus, appellants request the district court to proceed with the matter as it would any civil action before it.

Sitting as an appellate court in this matter, the district court has the authority to allow a jurisdictional amendment. Title 28 U.S.C. § 1653 provides: "Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." However, § 1653 "addresses only incorrect statements about jurisdiction that actually exists, and not defects in the jurisdictional facts themselves." Newman-Green, Inc., 490 U.S. at 831. Viewing "the facts as they exist when the complaint is filed," Newman-Green, Inc., 490 U.S. at 830, there was no diversity jurisdiction. The adversary Complaint named Textron and TwinEagles as defendants, and affirmatively pled that TwinEagles was a Florida corporation with its principal place of business in Collier County, Florida, and that plaintiffs were Collier County, Florida residents. (Dist. Doc. #20, ¶¶ 1, 2, 4).

TwinEagles remained a defendant until May 16, 2005, when appellants voluntarily dismissed it as a defendant in the adversary Complaint. Section 1653 does not assist appellants, because at this point in the proceedings the dismissal of TwinEagles did not create diversity jurisdiction. By the time this non-diverse party was dismissed, the only other party (Textron) had been dismissed for almost three years from the adversary Complaint. Appellants now concede that the dismissal of Textron was appropriate, although for a different reason than articulated by the Bankruptcy Court. The subsequent dismissal of the non-diverse TwinEagles meant that nothing was pending in the adversary Complaint, since all parties had been disposed of. The TwinEagles dismissal did not revive the case against Textron, and did not retroactively provide another basis for jurisdiction. Appellants' request to remand the matter to the Bankruptcy Court so it can consider whether to allow an amendment will be denied as futile.

**ORDERED AND ADJUDGED:**

1. Appellee's Motion to Dismiss Appeal for Lack of Jurisdiction (Doc. #13) is **DENIED.**

2. Appellants' Motion to Take Judicial Notice of Adjudicative Facts in Support of Subject Matter Jurisdiction of this Court Over the Instant Appeal (Doc. #24) is **DENIED.**

3. The matter is **REMANDED** to the Bankruptcy Court with directions that the Order Granting Motion for Summary Judgment (Doc.

#28) and entered a Final Judgment (Doc. #29) be **VACATED** and the Adversary Complaint be **DISMISSED** as to Textron Financial Corporation for lack of subject matter jurisdiction.

4. The Clerk shall transmit a certified copy of this Opinion and Order to the Clerk of the United States Bankruptcy Court, terminate any remaining deadlines and motions as moot, and close the file.

**DONE AND ORDERED** at Fort Myers, Florida, this 12th day of January, 2006.

JOHN E. STEELE
United States District Judge

Copies:
Hon. Alexander L. Paskay
Clerk, Bankruptcy
Counsel of record